UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MONIQUE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:22-cv-30011-KAR |
| | ) | |
| | ) | |
| THE CITY OF SPRINGFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON CITY OF SPRINGFIELD,
WILLIAM MAHONEY, AND GLADYS OYOLA-LOPEZ'S
MOTION  TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
(Dkt. No. 29)

ROBERTSON, U.S.M.J.

Monique Davis ("Plaintiff"), proceeding pro se, has, with leave of court, filed an

amended complaint against her former employer, the City of Springfield ("Springfield" or "the

City"), along with its Director of Human Resources and Labor Relations, William Mahoney

("Mahoney"), and her former supervisor, Gladys Oyola-Lopez ("Oyola-Lopez") (collectively,

"Defendants") (Dkt. No. 28).  At issue is Defendants' unopposed motion to dismiss (Dkt. No.

29), by which Defendants seek to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ.

P. 8, 10, 12(b)(1), and 12(b)(6).  The parties have consented to this court's jurisdiction (Dkt. No.

22).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the following reasons, Defendants' motion

to dismiss is GRANTED without prejudice inasmuch as it seeks dismissal pursuant to Fed. R.

Civ. P. 12(b)(6).

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff was hired by Springfield as a Senior Clerk Typist in the City's Police Department in 2015, and subsequently held positions as Principal Clerk and Associate Financial Information Specialist, also with the Police Department.  Later Plaintiff was hired for the position of Senior Office Assistant for the City Clerk's Office, where she worked under City Clerk Tasheena Davis until Davis's resignation on June 1, 2021.  Oyola-Lopez was sworn in as City Clerk on June 17, 2021.

According to Plaintiff, she immediately began to feel uncomfortable working under Oyola-Lopez.  Upon taking over as City Clerk, Oyola-Lopez moved around things that Plaintiff was actively working on without telling Plaintiff where she was putting them, which prevented Plaintiff from doing further work.  On separate occasions, Oyola-Lopez bought donuts and t-shirts for the office without inviting or telling Plaintiff.  Also, despite Plaintiff being the only public records employee at the time, Oyola-Lopez never attempted to speak to her.

At some point in June or July of 2021, Plaintiff applied for an open position as Public Records Coordinator.  On July 15, 2021, Plaintiff learned from a fellow applicant, who was a Caucasian female, that Oyola-Lopez had emailed her a "study guide" for the position.  This prompted Plaintiff to reach out to the Chief Diversity and Inclusion Officer on July 19, 2021, to report the unfair treatment, as she had not been given a "study guide."

Oyola-Lopez interviewed Plaintiff for the Public Records Coordinator position on July 22, 2021; the interview took place virtually because Plaintiff was on vacation.  Oyola-Lopez kept

---

[1] For purposes of ruling on this motion, the court accepts all facts alleged in Plaintiff's complaint as true and draws all reasonable inferences in Plaintiff's favor.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).

her camera off for the duration of the interview.  While Plaintiff had been advised that someone

from Human Resources ("HR") would be present, there was no HR representative on the call.

Plaintiff was notified on July 28, 2021, that she had not been selected for the position.

On July 30, 2021, Plaintiff returned to work from vacation.  Upon her return, Plaintiff sent an

email advising that she would no longer be covering the work of the Public Records Coordinator,

since one had been hired.

On August 5, 2021, Plaintiff received an email advising her that Oyola-Lopez wanted to

schedule a meeting with her, HR, and the Law Department to discuss public records.  However,

Oyola-Lopez never scheduled the meeting, which prompted Plaintiff to ask to set up her own

meeting to take place on August 17, 2021.  In that meeting, Ed Pikula advised Plaintiff that

Oyola-Lopez had made reports of insubordination against Plaintiff and wanted to know what

recourse she had to discipline Plaintiff.  At Plaintiff's invitation, Pikula reached out to the

Commissioner of the Police Department and Plaintiff's former supervisors and learned that no

claims of insubordination had ever been made against Plaintiff.

Shortly thereafter, Plaintiff was informed that everyone in the Clerk's office except her

had received merit increases for working during the COVID-19 pandemic.  While Plaintiff had

worked every day during the pandemic, Oyola-Lopez had not put Plaintiff's name in for an

increase.  Plaintiff later received the merit increase but only after advocating for it herself.

On August 23, 2021, Plaintiff emailed Oyola-Lopez advising her that she would be

taking a sick day due to the stress she had been feeling.  Oyola-Lopez responded by telling

Plaintiff that a meeting with HR would be taking place upon her return.  Plaintiff then met with

Oyola-Lopez, HR representative Catilyn Julius, and Mahoney on August 26, 2021.  Mahoney

asked Plaintiff if she wanted to state her concerns, and Plaintiff referred him to various email

correspondence she had sent regarding the unfair treatment she had experienced.[2]  When

Plaintiff inquired as to what was going to be done about the differential treatment, Mahoney

offered Plaintiff an employee assistance program card and told her that he would assign an

attorney to look into her claims.  Mahoney also presented Plaintiff with a revised job description

that had purportedly been adopted in late July.  Finally, Mahoney cautioned Plaintiff that there

was clear chain of command and that she needed to bring her concerns to her immediate

supervisor, Oyola-Lopez.

On September 2, 2021, Plaintiff went to the clerks in the front office for help but was told

that they would not help her and she would have to go to Oyola-Lopez.  The following day,

Plaintiff emailed Oyola-Lopez that she would be using an hour of vacation, as Plaintiff had done

in the past.  Oyola-Lopez responded that all vacations are subject to advance approval by an

immediate supervisor or his or her designee.  Plaintiff replied that she perceived this denial of

vacation to be retaliation for her speaking out against the way she had been treated.  Oyola-

Lopez did not respond.  Plaintiff alleges that Oyola-Lopez engaged in this this type of "passive-

aggressive" behavior toward her for months until Plaintiff eventually resigned on January 29,

2022.

On November 2, 2022, Plaintiff filed her amended complaint (Dkt. No. 28).  She claims

that the court has federal question jurisdiction and alleges violations of the Civil Rights Act of

1964, Anti-Discrimination Law, Retaliation, Hostile Work Environment, Workplace Bullying,

and Unpaid Wages.

---

[2] Plaintiff alleges only that she had "state[d] her concerns in [a] multitude of emails."  She does
not provide any information regarding the dates of the emails, the recipients, or the particular
concerns she raised.

4

## II.    LEGAL STANDARDS

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  On a motion to dismiss for lack of subject-matter jurisdiction, "'[t]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)).  When ruling on a 12(b)(1) motion the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

A defendant also may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion to dismiss, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard invites a two-step pavane." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012)). First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id*. (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Morales-Cruz*, 676 F.3d at 224 (internal quotation marks omitted)).  In ruling on a motion to dismiss, the court may consider "only the complaint, documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014).  When deciding a 12(b)(6) motion, "the mere fact

that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Vega– Encarnación v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003) (citing *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 & n.1 (1st Cir. 1990)).  Because a court that lacks subject matter jurisdiction "has no authority to address the dispute presented," *Attias v. Carefirst, Inc.,* 865 F.3d 620, 624 (D.C. Cir. 2017), *cert. denied,* 138 S. Ct. 981 (2018), "[w]hen a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002).

## III.    DISCUSSION

Defendants first argue that Plaintiff's amended complaint should be dismissed for lack of subject matter jurisdiction because, while Plaintiff purports to state a claim for Violation of the Civil Rights Act of 1964 as the basis for federal question jurisdiction, she does not identify a specific portion of the statute that she alleges was violated or allege how the statute was violated.[3]  The court disagrees.

Title VII, as amended, protects employees and job applicants from employment discrimination based on race, color, religion, sex, and national origin.  *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from "fail[ing] or refus[ing] to hire or … discharge[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation,

---

[3] Defendants also argue that Plaintiff's amended complaint, which is laid out in lengthy, unnumbered paragraphs, should be dismissed for failure to comply with Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim," and Fed. R. Civ. P. 10(b), which requires numbered paragraphs.  The court declines to dismiss Plaintiff's pro se amended complaint, the narrative portion of which is only three pages long, is orderly and coherent, and identifies the acts and actors about which Plaintiff complains, on these more technical procedural grounds.

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").  Title VII also contains an anti-retaliation provision.  *See* 42 U.S.C. § 2000e-3(a) (providing that it is unlawful for an employer "to discriminate against any individual ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").  "The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.,* their status.  The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.,* their conduct." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).  An employer can violate Title VII by committing discrete acts of discrimination or retaliation, or by creating a hostile work environment. *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002).  Plaintiff purports to allege all three here.

According to Plaintiff's amended complaint, when she applied for the open position as Public Records Coordinator, Oyola-Lopez provided a Caucasian female applicant a "study guide" for the position that Oyola-Lopez did not similarly give to Plaintiff.  After Plaintiff reported this unfair treatment to the Chief Diversity and Inclusion Officer, Oyola-Lopez made unsubstantiated claims of insubordination against Plaintiff, did not put Plaintiff's name in for a merit increase to her salary to which she was entitled, and denied Plaintiff the use of vacation when Plaintiff requested it in such a way as had been granted in the past.  In addition, the amended complaint supports an inference that Oyola-Lopez told the clerks in the front office not to help Plaintiff, and Plaintiff alleges that Oyola-Lopez treated her in a "passive-aggressive" manner for months after her complaints of discrimination and retaliation.  While the latter allegations may be insufficient to state a claim for a hostile work environment, Plaintiff's amended complaint at the least minimally states claims for discrete acts of discrimination and

retaliation, particularly when read liberally as required by Plaintiff's pro se status.  *See Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004) ("[T]he fact that plaintiff filed the complaint pro se militates in favor of a liberal reading." (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000))).  Thus, the court concludes that it has federal question jurisdiction over Plaintiff's amended complaint.  *See* 28 U.S.C. § 1331.

That said, "[j]udicial recourse under Title VII ... is not a remedy of first resort."  *Morales-Vallellanes v. Potter*, 339 F.3d 9, 18 (1st Cir. 2003) (citing *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990)).  "Before filing a Title VII claim, an employee must first exhaust administrative remedies, a process that begins with the filing of an administrative charge before the EEOC." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009) (citing *Franceschi v. United States Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008)).  *See also Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009) ("Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination." (citing 42 U.S.C. § 2000e-5(f))).  "The requirement of administrative exhaustion serves to 'provide the employer with prompt notice of the claim and to create an opportunity for early conciliation.'" *Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017) (quoting *Fantini*, 557 F.3d at 26).  After filing an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or, in Massachusetts, the Massachusetts Commission Against Discrinination ("MCAD"), "the employee may sue in federal court only if the EEOC dismisses the administrative charge or if it does not bring a civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge." *Abraham*, 553 F.3d at 119 (citing *Franceschi*, 514 F.3d at 85).  The employee must also wait for the EEOC or the MCAD to give notice of the employee's right to sue, which generally occurs in what has been termed a

right-to-sue letter, after which the employee has ninety days to file a complaint in federal court. *Id*. (citing *Franceschi*, 514 F.3d at 85).  The failure to exhaust administrative remedies generally "'bars the courthouse door.'"  *Franceschi*, 514 F.3d at 85 (quoting *Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).  Exhaustion of administrative remedies is not a jurisdictional requirement, and, thus, the appropriate ground for dismissal for failure to exhaust is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  *Innocent v. HarborOne Bank*, 319 F. Supp. 3d 571, 572 (D. Mass. 2018), *aff'd*, No. 18-1814, 2019 WL 13219629 (1st Cir. June 25, 2019) (citing *Vera v. McHugh*, 622 F.3d 17 (1st Cir. 2010)).

Plaintiff does not allege in her amended complaint that she ever filed an administrative charge with the EEOC or the MCAD.  Therefore, her Title VII claims for discrimination, retaliation, and hostile work environment/bullying must be dismissed.  *See Innocent*, 319 F. Supp. 3d at 574 (dismissing the plaintiff's Title VII retaliation claim for failure to exhaust where the plaintiff did not assert in his complaint that he had first filed an administrative complaint).  Because dismissal is based on exhaustion grounds, it is without prejudice to Plaintiff's ability to return to court to assert any claims that she has once she has exhausted her administrative remedies.  *See Lebrón-Ríos v. U.S. Marshal Serv.*, 341 F.3d 7, 8-9 (1st Cir. 2003) (holding that the district court's dismissal of the plaintiffs' Title VII claims based on their failure to file charges of discrimination with the EEOC before bringing suit should have been without prejudice to any later Title VII action brought by the plaintiffs on properly exhausted claims).

This leaves only Plaintiff's state-law claim for unpaid wages. over which the court has jurisdiction based solely on supplemental jurisdiction under 28 U.S.C. § 1367.  "[W]hen all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the

interests of fairness, judicial economy, convenience, and comity.'" *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (quoting *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015)). "'[I]n the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). *See also Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (observing that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation" (citing *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995))). Under these circumstances where no substantial litigation has occurred, the court will decline to exercise supplemental jurisdiction over the remaining state law claim. Accordingly, because the court declines to exercise supplemental jurisdiction, Plaintiff's Unpaid Wages claim is subject to dismissal without prejudice as well.

IV.    **CONCLUSION**

For the above-stated reasons, Defendants' motion to dismiss (Dkt. No. 29) is GRANTED without prejudice inasmuch as it seeks dismissal of Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

It is so ordered.

Dated: August 2, 2023                          /s/ Katherine A. Robertson
                                               KATHERINE A. ROBERTSON
                                               United States Magistrate Judge