UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MONIQUE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-30011-KAR |
| | ) | |
| CITY OF SPRINGFIELD, WILLIAM | ) | |
| MAHONEY, and GLADYS OYOLA, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON ALL COUNTS
(Dkt. No. 81)

ROBERTSON, U.S.M.J.

I.    Introduction

Self-represented plaintiff Monique Davis ("Plaintiff") brought suit against her former

employer, the City of Springfield ("the City"), and two of the City's employees, William

Mahoney ("Mr. Mahoney") and Gladys Oyola-Lopez ("Ms. Oyola") [1] (collectively,

"Defendants"), for allegedly discriminating against her based on race, subjecting her to a hostile

work place, and retaliating against her for engaging in protected activity.  The amended

complaint ("Am. Compl.") does not identify the statutory bases for these claims.  The record,

however, establishes that Plaintiff filed administratively with the Massachusetts Commission

Against Discrimination and the federal Equal Employment Opportunity Commission.  The court

assumes, for this reason, that Plaintiff intends to assert claims under Mass. Gen. Laws ch. 151B,

§§ 4(1) and 4(1B) ("Chapter 151B"), and Title VII of the Civil Rights Act of 1964 ("Title VII"),

---

[1] The court follows Spanish naming conventions and refers to Ms. Oyola-Lopez as Ms. Oyola in
this decision.  *See, e.g., United States v. Martínez-Benítez*, 914 F.3d 1, 2 n.1 (1st Cir. 2019).

42 U.S.C. § 2000e *et seq.*  For the reasons set forth below, Defendants' summary judgment motion is granted as to each of these claims.

    II.    <u>Legal Standard</u>

    Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction."  *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).  "A fact is 'material' when its (non)existence could change a case's outcome.  *Id*. (citing *Borges*, 605 F.3d at 5). A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'"  *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325).  If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute."  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor.  *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Cirs., Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

    Defendants submitted a statement of undisputed facts in support of their summary judgment motion with references to supporting materials filed therewith (Dkt. No. 83).  *See* LR,

D. Mass. 56.1. Plaintiff did not file a statement of material facts as to which she contended that there is a genuine issue to be tried supported by references to affidavits, depositions and other supporting documents. *See id.* Instead, she filed a memorandum in which she purports to explain or contest Defendants' factual assertions supported by various documents filed therewith (whose admissibility for purposes of summary judgment has not been challenged by Defendants) (Dkt. No. 86). Local Rule 56.1 provides, in pertinent part, that "[m]aterial facts of record set forth in the statement required to be served by the moving party shall be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties." *Id.* Defendants invoke this provision, arguing that the court should deem their factual assertions admitted for summary judgment purposes (Dkt. No. 86 at 1). The court declines to do so on a blanket basis.

In part because the disputes between the parties principally concern the legal significance of events rather than whether certain events occurred, "[t]his court finds that it is appropriate to consider [Plaintiff's factual assertions] to the extent [those factual assertions] are undisputed or are supported by citations to evidence that can be identified in the record. … To the extent [P]laintiff's [factual assertions] are not supported by adequate citations to the record or merely reflect [P]laintiff's legal arguments, this court has not credited them as undisputed facts." *Tian v. Aspen Tech., Inc.*, 53 F. Supp. 3d 345, 350-51 (D. Mass. 2014); *see also Givens v. Mass. Inst. of Tech.*, Civil Action No. 24-10355-BEM, 2025 WL 2645380, at *1 (D. Mass. Sept. 15, 2025) ("[T]he Court will disregard [Plaintiff's] attempts to dispute facts where there is no citation to the record to demonstrate that such a dispute actually exists, or where the purported evidence does not actually create a genuine dispute of fact."). The following facts are undisputed except where otherwise noted.

III.     Factual Background

Beginning on or around May 26, 2015, through November 2020, Plaintiff, who identifies as Black, was employed by the Springfield Police Department, where, she asserts, she was a valued employee (Dkt. No. 83-8 at 1, 14; Dkt. No. 85-13 at 2).  Plaintiff left the City's police department in or around November 2020 when she was hired by Tasheena Davis, then the City's Clerk, as a Senior Office Assistant working primarily in public records (Dkt. No. 83-2 at 4; Dkt. No. 85-8 at 4; Dkt. No. 85-13 at 2).  At some point after Plaintiff moved to the Clerk's Office, Andrea Stone, the public records coordinator, retired.  In May 2021, in anticipation of Ms. Stone's retirement, Tasheena Davis recommended Plaintiff to Ms. Oyola as Ms. Stone's replacement (Dkt. No. 83-1 at 9, 14, 15).  On June 23, 2021, a few days before Ms. Stone retired, she sent an email to internal clients informing them that Plaintiff would fill in as public records coordinator until Ms. Stone's replacement was hired (Dkt. No. 85-8 at 3; Dkt. No. 85-12 at 3-4).

In the meantime, on or around June 1, 2021, after Tasheena Davis moved to the City's law department, Ms. Oyola was appointed as acting City Clerk.  She was sworn in as City Clerk on June 17, 2021 (Dkt. No. 83-1 at 6).  On Ms. Stone's retirement, Ms. Oyola posted the public records coordinator position.  Plaintiff applied and was interviewed.  On or around July 28, 2021, Plaintiff was notified that Ms. Oyola had hired Marvina Shubrick for the public records coordinator position.  It is undisputed that, like Plaintiff, Ms. Shubrick is Black (Dkt. No. 83-1 at 13; Dkt. No. 83-10 at 3; Dkt. No. 85-5 at 5).  On July 30, 2021, after learning she had not been selected for the position, Plaintiff sent an email to City employees in other departments who needed the services of the public records coordinator, instructing them to direct their inquiries to the new hire (Dkt. No. 83-20 at 1; Dkt. No. 85-8 at 3).  Ms. Shubrick had not been trained for her

new position when Plaintiff sent this email, which she did without consulting Ms. Oyola (Dkt. No. 85-8 at 3, 6).

In an August 17, 2021 email Plaintiff sent to Edward Pikula, City Solicitor, Caitlyn Julius, Assistant Director of Human Resources, and Mr. Mahoney, who was Director of Human Resources and Labor Relations, she provided an account of incidents that had led her to seek a meeting she had with Mr. Pikula in the morning on August 17, 2021 (Dkt. No. 83-10 at 2-3). Plaintiff expressed concerns about Ms. Oyola's management of the public records department and neglect of its employees. She stated that, on July 2, 2021, Ms. Oyola brought doughnuts in for the office and didn't include her; that Ms. Oyola ordered T-shirts for employees in the Clerk's Office and didn't include her; and that she learned that Ms. Oyola had provided applicants for the public records coordinator position other than herself access to a study guide concerning the public records function. Plaintiff informed Ms. Julius and Messrs. Pikula and Mahoney that, on July 19, 2021, she had sought guidance via email from the City's Chief Diversity and Inclusion Officer (Dkt. No. 83-10 at 2). In this August 17, 2021 email, Plaintiff acknowledged that, after she learned that Ms. Oyola had not selected her for the public records coordinator position, she emailed the police department and emergency communications, informing them that she would no longer be doing the work of the public records coordinator, and that Ms. Oyola had sent her an email after this unilateral announcement, informing her that Ms. Oyola intended to schedule a meeting with HR and the City's legal department to discuss roles and interdepartmental cooperation regarding public records. Plaintiff reported that the meeting was not held, so she pursued a meeting on her own with Mr. Pikula and Ms. Julius (Dkt. No. 83-10 at 3).

On the same day that she met with Mr. Pikula, Plaintiff sent an email to Ms. Oyola and Camille Nelson stating that the day had been overwhelming and due to the stress of the work

environment, she was taking the rest of the day off as vacation time (Dkt. No. 85-9 at 2).  Ms. Oyola responded that she had marked Plaintiff as sick for the remainder of the day, and that she and Plaintiff would meet with Human Resources upon Plaintiff's return (Dkt. No. 85-9 at 3).

On August 20, 2021, Plaintiff sent an email to Messrs. Pikula and Mahoney with the subject line, Work Place Concerns Continued.  She complained that since her August 17, 2021 meeting with Mr. Pikula, she had learned that Ms. Oyola had offered assistance to staff members in becoming notaries public without including her; that Krista Efantis, a colleague employed in the City Clerk's office with whom she had been friendly, had declined to sit with her to avoid the drama; that Ms. Stone, the retired Public Records Coordinator, had been asked to come back and train her successor; and that Ms. Oyola had not communicated with her in the two months that Ms. Oyola had been serving as City Clerk (Dkt. No. 85-15).

On or around August 26, 2021, after Ms. Oyola had notified Plaintiff that Plaintiff was supposed to request advance notice from her supervisor before using vacation (in response to another unilateral announcement by Plaintiff that she was taking vacation time that day), Plaintiff attended a meeting with Mr. Mahoney, Ms. Oyola, and Ms. Julius.  According to Mr. Mahoney during this meeting, he provided Plaintiff with a new job description that the City had adopted for her position that did not involve a change in grade or pay; told Plaintiff that in the absence of the City's Chief Diversity and Inclusion Officer, he would assign a lawyer to investigate her complaints (he did); and informed her that if she had questions about her job responsibilities, she should discuss those with Ms. Oyola, who was her supervisor (Dkt. No. 85-13 at 5).  Attorney Mary Kelleher's report of her investigation was dated September 3, 2021 (Dkt. No. 85-8 (made part of the record by Plaintiff, excluding exhibits)).  Mr. Mahoney reviewed the investigative

report and, on September 24, 2021, informed Plaintiff that he had concluded that there were no violations of City policies (Dkt. No. 85-11 at 9-10).

Among other issues, Ms. Kelleher's report noted Plaintiff's complaint that Ms. Oyola did not approve a merit bonus for her that was paid to non-union employees who had performed certain public-facing work during the COVID-19 pandemic (Dkt. No. 85-8 at 5; 85-2 at 2-3). It is undisputed that Plaintiff received a $3,000.00 COVID Merit Award in 2021. Ms. Stone, the retired public records coordinator, received an award of the same amount (Dkt. No. 83-6 at 1-2; Dkt. No. 83-2 at 6). Ms. Oyola testified at her deposition that, because she did not supervise Plaintiff during the period covered by the human resources questionnaire sent to managers for purposes of determining employee eligibility for the awards, she did not make a submission for an award for Plaintiff (Dkt. No. 83-1 at 7). According to the City and Mr. Mahoney, because Plaintiff worked for the Springfield Police Department for part of the relevant period and the City Clerk's Office for the other part of the relevant period for which these merit bonuses were awarded, ascertaining her entitlement was complicated by the need to gather information from several sources (Dkt. No. 83-6).

It is undisputed that, after the public records coordinator position was posted, Ms. Oyola sent a link to a public website that described the public records function to Ms. Efantis, who was one of the applicants (Dkt. No. 83-1 at 8; Dkt. No. 83-2 at 15; Dkt. No. 85-7 at 4). Ms. Oyola did so in response to Ms. Efantis's request for information about the public records function. Ms. Oyola did not send the link to any other applicant (Dkt. No. 83-1 at 9-10). It is also undisputed that Plaintiff was already a notary public when Ms. Oyola offered staff members assistance in becoming notaries public (Dkt. No. 85-5 at 3). According to Defendants, other

members of Ms. Oyola's staff who were already notaries were not offered support to begin the process of becoming notaries (Dkt. No. 85-5 at 8).

While neither party has laid out a clear timeline of Plaintiff's presence and absence from the workplace from September 2021 through January 2022, on November 2, 2021, she was approved for continuous FMLA leave from September 21 through October 20, 2021, and for intermittent FMLA leave from October 21 through November 19, 2021 (Dkt. No. 85-15 at 8). On December 27, 2021, she was notified that she would exhaust her FMLA leave effective January 17, 2022 (Dkt. No. 85-15 at 9). On January 27, 2022, Plaintiff resigned her position with the City, citing an "unbearable and rather uncomfortable" work environment and stating that she would have to find other employment "because the City Clerk choose to essentially pick on her" (Dkt. No. 83-9).[2]

IV.    Discussion

Title VII and Chapter 151B prohibit an employer from discriminating against an employee based on a protected characteristic, including race. "Under both Title VII and Chapter 151B, a plaintiff can bring claims for disparate treatment or hostile environment …." *O'Horo, M.D. v. Boston Med. Ctr. Corp.*, 131 F.4th 1, 12 (1st Cir. 2025). While there are some differences

---

[2] Defendants' statement of material facts leaves the chronology of Plaintiff's employment with the City Clerk's Office unclear in a number of respects and, as Defendants point out, Plaintiff did not meet her obligation to set out a concise statement of material facts of record as to which she contends there is a genuine issue to be tried. LR., D. Mass. 56.1. The relevant and applicable provisions in Fed. R. Civ. P. 56(c)(1) and (e) and LR., D. Mass. 56.1 are "aimed an enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record." *Puerto Rico Am. Ins. Co. v. Rivera-Vázqúez*, 603 F.3d 125, 131 (1st Cir. 2010). Nonetheless, Fed. R. Civ. P. 56(3) authorizes the court to rely on material in the record that neither party has cited in a statement of facts, as the court has done in this case. The parties' submissions, and, in particular, Plaintiff's submissions, have greatly complicated the task of discerning material facts – undisputed or disputed – in this case.

between the statutes and the analyses, there are cases in which it is appropriate to address the

Title VII and the Chapter 151B claims together.  *See id.*  This is such a case.[3]

> A.    <u>Discrimination: Disparate Treatment</u>

>    a.   Failure to Promote

"Direct evidence [of discrimination] 'consists of statements by a decisionmaker that

directly reflect the alleged animus and bear squarely on the contested employment decision.'"

*Givens*, 2025 WL 2645380, at *5 n.13 (quoting *Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R.,*

*Inc.*, 999 F.3d 37, 51 (1st Cir. 2021) (citations omitted)).  Where Plaintiff has not pointed to any

statements by Ms. Oyola, the decision maker, that directly reflect the alleged animus and bear

squarely on the contested employment decision, "the *McDonnell Douglas* burden-shifting

framework applies."  *Id.* at *5 (citing *McDonnall Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973); *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001); *Knight v. Avon Prods.,*

*Inc.*, 780 N.E.2d 1255, 1261-62 (Mass. 2003)).

> In setting out her prima facie case, Plaintiff must show: (1) she is a member of a
> protected class, (2) she was performing satisfactorily so as to meet the employer's
> legitimate job-performance expectations, (3) she suffered some adverse
> employment action at the hands of her employer, and (4) she was treated less
> favorably than someone outside her protected class.

*Ashley v. Paramount Hotel Grp., Inc.*, 451 F. Supp. 2d 319, 330 (D.R.I. 2006) (citing *McDonnell*

*Douglas,* 411 U.S. at 802; *Smith v. Stratus Comput., Inc.*, 40 F.3d 11, 15 (1st Cir. 1994); *Gannon*

*v. Narragansett Elec. Co.*, 777 F. Supp. 167, 168 (D.R.I. 1991)).  The establishment of a *prima*

*facie* case creates, in effect, a presumption that an employer has discriminated.  *See St. Mary's*

---

[3] One difference between Title VII and Chapter 151B is that "there is no individual liability under Title VII," *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009), such that, as a matter of law, neither Ms. Oyola nor Mr. Mahoney can be individually liable to Plaintiff under Title VII.

*Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  Thus, the First Circuit recently set forth the fourth element of the *prima facie* case as requiring a plaintiff to show that "the adverse employment action transpired under circumstances giving rise to an inference of discrimination." *Pipoli v. Dept. of Human Servs., Off. of Veterans Servs.*, 123 F.4th 565, 571 (1st Cir. 2024) (citing *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 29 (1st Cir. 2019)).

Plaintiff easily satisfies the first and third elements of the required *prima facie* case on her failure to promote claim: she is a member of a protected class under Title VII and Chapter 151B, and, when she was denied a promotion to the public records coordinator position, she suffered an adverse employment action.  *See Vil v. PricewaterhouseCoopers LLP*, Civil Action No. 11-10780-GAO, 2012 WL 3202852, at *12 (D. Mass. Aug. 2, 2012) (stating that the plaintiff satisfied the third element of a *prima facie* case by alleging that he was denied a promotion based on his race and in retaliation for protected activity).  Construing the record in the light most favorable to Plaintiff, she has satisfied the second element insofar as there is no evidence she was not performing to the City's reasonable expectations when she was denied the promotion she sought.  The deficiency in her *prima facie* case lies with the fourth element: because Ms. Shubrick, the individual who was selected over Plaintiff for the public records coordinator position is, like Plaintiff, Black, Ms. Shubrick's selection does not give rise to an inference of discrimination.  *See Givens*, 2025 WL 2645380, at *9 (holding that, where the plaintiff had not presented competent evidence of discriminatory animus, her claim of racial discrimination failed).

Plaintiff's submission related to Ms. Shubrick's selection for the public records coordinator position appears aimed at showing that it was a result of favoritism, and that Ms. Shubrick is neither qualified for, nor good at, the job (e.g., Dkt. Nos. 85-8 at 15-22, 23-27; 85-9).

That Ms. Oyola may have chosen someone she had worked with who lacked experience in the public records function "doesn't cut it. After all, 'the anti-discrimination laws do not insure against' an employer's 'inaccuracy or flawed business judgment'; rather, 'they are designed to protect against, and to prevent, actions spurred by some discriminatory animus.'" *Brandt v. Fitzpatrick*, 957 F.3d 67, 78 (1st Cir. 2020) (quoting *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 67 (1st Cir. 2008)). "[W]hen faced with employment decisions that lack a clear discriminatory motive, '[c]ourts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions.'" *Rodríguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 48-49 (1st Cir. 2019) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991)). Plaintiff has pointed to no direct evidence of discrimination by Ms. Oyola, the decisionmaker, nor has she pointed to evidence giving rise to a presumption or inference that Ms. Shubrick was selected over her because of racial animus. For these reasons, Defendants are entitled to summary judgment on Plaintiff's Title VII and Chapter 151B failure to promote claims.

> b. COVID Merit Bonus

Plaintiff's claim concerning the COVID-19 bonus suffers from the same defect. She argues that a factfinder could infer discrimination because Ms. Oyola did not submit her name for a bonus on the ground that she was not Plaintiff's supervisor during the relevant time, but did submit Ms. Stone's name for the bonus even though Ms. Oyola was not Ms. Stone's supervisor during the relevant time. Additionally, she notes that the bonus paid to her was less than the amount for which Mr. Mahoney initially nominated her (Dkt. No. 85 at 1-2; Dkt. No. 85-2 at 6). Based on Ms. Oyola's deposition testimony, it is undisputed that she did not take steps to ensure that Plaintiff received a COVID-19 bonus. Ms. Oyola initially testified that she did not believe

she had submitted Ms. Stone's name for a COVID-19 bonus because Ms. Stone worked as public records coordinator and Ms. Oyola did not supervise her in that capacity, then changed her testimony to reflect that she could not remember whether she had done so (Dkt. No. 83-1 at 7-8). For purposes of Defendants' motion, viewing the record in the light most favorable to Plaintiff, the court assumes that Ms. Oyola submitted Ms. Stone's name for a COVID-19 bonus, thereby treating Ms. Stone, someone who was similarly situated to Plaintiff in relevant respects, differently than she treated Plaintiff. Further, the court assumes without deciding that a delay in the payment of a bonus might rise to the level of an adverse employment action. Plaintiff's claim of disparate treatment with respect to the COVID bonus fails at the same step of the *prima facie* inquiry as does her failure to promote claim: she has not shown that she was treated differently because of a protected characteristic. Defendants represent – without contradiction by Plaintiff – that Ms. Stone also is Black (Dkt. No. 83 at 2, ¶ 9). Thus, while Plaintiff may have shown that she was treated differently than a similarly situated individual, she has not shown that she was treated differently because of race. *See Givens*, 2025 WL 2645380, at *9; *Ashley*, 451 F. Supp. at 330.

Plaintiff has also failed to raise an inference of disparate treatment based on race with respect to the amount of her COVID-19 bonus. According to a document Plaintiff submitted, the factors to be considered in determining the amount of an employee's bonus included the extent an employee worked from their regularly assigned work station as opposed to working remotely; the extent to which their work had risked exposure to COVID-19; and work the employee had engaged in directly related to mitigating the effects of the pandemic on Springfield residents, such as, for example, organizing COVID-19 clinics or administering vaccines (Dkt. No. 85-2 at 2-3). The policy specifically provides that an employee performing her regular duties providing

services to the public was not performing COVID-19 related work.  Mr. Mahoney, whom

Plaintiff has accused of discriminating against her, proposed a bonus of $4,500.  According to a

document Plaintiff submitted, Thomas Ashe, the Mayor's chief of staff, responded to Mr.

Mahoney that he would need some additional clarification from department heads before

approving a COVID-19 merit bonus of $4,500 for Plaintiff (Dkt. No. 85-2 at 6).  Plaintiff has not

shown that she worked in a position that required her to interact with members of the public on a

frequent and regular basis at the height of the pandemic, nor does the record show that she

engaged directly in work that mitigated the effects of the pandemic on Springfield residents.

Thus, the record establishes a legitimate business reason for the amount of Plaintiff's bonus.  For

her part, Plaintiff has not identified a similarly situated employee, i.e., someone who had job

responsibilities similar to her responsibilities, who was outside the protected class and was

treated more favorably than she was treated in terms of the bonus amount.  *See, e.g., Diaz v. City

of Somerville*, 59 F.4th 24, 29 (1st Cir. 2023) (citing *Matthews v. Ocean Spray Cranberries, Inc.*,

686 N.E.2d 1303, 1309-10 (Mass. 1997) (noting that a plaintiff can show an employer's stated

reason for an adverse action is not the real reason for the action by demonstrating that similarly

situated employees were treated differently)).  On this record, Plaintiff's complaint about the

amount of her bonus falls far short of raising an inference of different treatment based on a

protected characteristic.

     "An adverse employment action is one that materially changes the conditions of a

plaintiff's employment."  *Desai v. Univ. of Mass. Mem'l Med. Ctr.*, 605 F. Supp. 3d 255, 267 (D.

Mass. 2022).  To the extent Plaintiff seeks to base a disparate treatment claim on the fact that Ms.

Oyola emailed Ms. Efantis a link to a public website describing the public records function

before interviews for the position, Plaintiff has not identified an event that would qualify as an

adverse employment action under Title VII or Chapter 151B.  *See O'Horo*, 131 F.4th at 18
(stating that even if the plaintiff identified an instance of disparate treatment, where there was no
harm that left him worse off, he had not identified an adverse employment action).  Plaintiff has
not explained how providing Ms. Efantis with a link to a public website materially changed the
conditions of Plaintiff's employment, and the court is unable to discern any material change to
Plaintiff's employment, including any material disadvantage to her in her application for the
public records coordinator position given her experience with the public records function.
Further, even if the website referral was an adverse employment action, Ms. Oyola provided a
legitimate non-discriminatory reason for this routine and modest courtesy to a current employee
– Ms. Efantis asked Ms. Oyola about the responsibilities of the position and Ms. Oyola
responded by providing the website link – and Plaintiff has not pointed to any evidence to show
that this explanation was untrue, or that it was a pretext for discrimination (or retaliation).
Accordingly, this event cannot serve as a basis for any claim under Title VII or Chapter 151B.
*See id*. at 14-17.

    In summary, Defendants are entitled to summary judgment on Plaintiff's federal and state
law disparate treatment claims.

    B.    Discrimination: Hostile Work Environment

    "To establish a hostile work environment, [Plaintiff] is required to 'show that [her] work
environment was so pervaded by racial harassment as to alter the terms and conditions of [her]
employment.'"  *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 317 (1st Cir. 2016)
(quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 768 (1998)).  To make out a prima facie
showing, Plaintiff must demonstrate:

> (1) that [she] is a member of a protected class; (2) that [she] was subjected to
> unwelcome [racial] harassment; (3) that the harassment was based upon [race];

> (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of [her] employment and create an abusive work environment; (5) that [racially] objectionable conduct was both objectively and subjectively offensive , such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Id.* at 317 (third, fourth, and sixth alterations in original) (quoting *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 15 (1st Cir. 2007)). This standard applies to Plaintiff's state law Chapter 151B claim as well as her federal Title VII claim. *See Ponte v. Steelcase, Inc.*, 741 F.3d 310, 319 n.9 (1st Cir. 2014); *Kathuria v. Dental Dreams LLC*, Civil Action No. 17-30077-MGM, 2020 WL 3719507, at *6 (D. Mass. Jan. 8, 2020).

Factors a court considers when determining whether alleged harassing conduct meets the severe and pervasive standard include "'the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance.'" *Ponte*, 741 F.3d at 320 (quoting *Gerald v. Univ. of P.R.*, 707 F.3d 7, 18 (1st Cir. 2013)). To be actionable, "the harassment must pass a certain threshold of severity. Offhand comments and a tense or uncomfortable working relationship with one's supervisor are, without more, insufficient to support a hostile work environment claim." *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 12 (1st Cir. 2015). An employer is not required to provide a workplace "free from the usual ebb and flow of power relations and inter-office politics." *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 54 (1st Cir. 2000) (discussing constructive discharge standard).

The court is not persuaded that Plaintiff has shown that she was subjected to a pervasively hostile work environment. The court does not doubt that Plaintiff perceived her work environment to be hostile and uncomfortable. Her perception, however, is not sufficient on its own to give rise to a trial-worthy hostile work environment claim. While

15

Plaintiff has not clearly articulated the precise basis of her hostile work environment claim, it appears that she complains that she was subjected to a hostile work environment because Ms. Oyola generally ignored her, and that Ms. Oyola failed to invite her to participate when Ms. Oyola brought in doughnuts for staff and bought t-shirts for union staff members. She additionally complains of Ms. Oyola's alleged disparate treatment in failing to send her the link to the public website describing the public records function, delay in scheduling her interview for the public records coordinator position and approving her merit bonus, and directing an Assistant City Clerk to refer Plaintiff to Ms. Oyola for a work-related matter rather than simply going to the Assistant City Clerk for assistance (Dkt. No. 85-10 at 6). Plaintiff has alleged, from her perspective, a tense and uncomfortable working relationship with Ms. Oyola and dissatisfaction with administrative procedures and decisions by a new supervisor. Plaintiff has not alleged conduct by Ms. Oyola that was physically threatening or that Ms. Oyola directed any humiliating or offensive comments at Plaintiff. So far as appears from the record, Ms. Oyola did not criticize Plaintiff's job performance in one-on-one conversations or in front of other employees. Changes in office procedures by a new supervisor, not shown to be directed at any particular employee, are not the stuff of which hostile environment claims are made.

The court finds the case of *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 44 (1st Cir. 2011) instructive. In *Colón-Fontánez*, the plaintiff claimed that her supervisor would refuse to meet with her, permitted other employees to come and go from her office but avoided the plaintiff, refused to greet her, required her to wait before their meetings, yelled at her in front of other employees, and refused to take action when the plaintiff

complained about how she was treated by other employees. *See id.* The First Circuit held that, "[w]hile these facts certainly indicate[d] an uncomfortable and tense working relationship between [the supervisor] and [the plaintiff], they [were] not sufficiently severe or pervasive to constitute a hostile work environment." *Id.* Viewing the record in the light most favorable to Plaintiff, her allegations of mistreatment pale in comparison to the allegations advanced by the plaintiff in *Colón-Fontánez*. Those allegations were held to be an insufficient basis for a hostile work environment claim. *See also O'Horo*, 131 F.4th at 21-22 (holding that the plaintiff's evidence did not establish a workplace situation so rife with discriminatory animus that it amounted to a hostile work environment; citing *Colón-Fontánez)*; *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 201 (D. Mass. 2009) ("To an objective observer familiar with the daily workplace interactions that occur between supervisors and their employees, as well as the clashes of personality that are the predictable byproducts of the human condition, [the plaintiff's] complaints would appear for the most part unremarkable or even trivial."). As to Mr. Mahoney, Plaintiff alleges only that he failed to address her complaints about Ms. Oyola (Dkt. No. 85 at 9-10). Viewing the evidence objectively, no reasonable factfinder could conclude that Plaintiff was the victim of a hostile work environment because of Ms. Oyola's actions or inaction or Mr. Mahoney's alleged inaction.

Moreover, even if Plaintiff's complaints rose to the level of a hostile work environment, which they do not, Plaintiff "has not demonstrated that [s]he was subjected to any of the complained of actions because of [her] race." *Garmon*, 844 F.3d at 318. The record establishes that Ms. Oyola hired a member of Plaintiff's protected class for the position that Plaintiff sought and is devoid of any comment or action directed at

Plaintiff by Ms. Oyola that evidenced discriminatory animus. *See O'Horo*, 131 F.4th at 20 (holding that plaintiff's hostile work environment claim failed when it rested, for the most part, on comments or incidents unrelated to the protected characteristic); *Hall*, 667 F. Supp. 2d at 202. The court acknowledges that "'[e]vidence of harassment of third parties can help prove a legally cognizable claim of a hostile environment." *Pike v. Budd*, 133 F.4th 74, 88 n.8 (1st Cir. 2025) (quoting *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 55 n.4 (1st Cir. 2000)). Plaintiff alleges that other Black employees have accused Ms. Oyola of discrimination based on race. These allegations as advanced by Plaintiff are devoid of any detail and do not describe activity by Ms. Oyola that would give rise to a hostile work environment based on race. Moreover, such evidence is relevant only when offered to help prove a cognizable claim of a hostile environment. *See id.* at 88-89; *Hernandez-Loring*, 233 F.3d at 55. Here, Plaintiff has not advanced a cognizable hostile environment claim.

For the foregoing reasons, the defendants are entitled to summary judgment on Plaintiff's Title VII and Chapter 151B hostile work environment claims.

C.    Retaliation

Plaintiff further asserts that Defendants retaliated against her by changing her job title and duties after she engaged in protected activity (Dkt. No. 85 at 13). Title VII and Chapter 151B make it unlawful for an employer to retaliate against an employee for engaging in conduct protected by federal and state antidiscrimination laws. *See Nakanwagi v. Exec. Off. of Trial Ct.*, 786 F. Supp. 3d 313, 323 (D. Mass. 2025). The elements of a claim of retaliation are that the plaintiff engaged in protected conduct; the employer took an adverse employment action; and the protected conduct and the adverse

action were causally related.  *Id.* (citing *Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105,

115 (1st Cir. 2024)).  "'[T]o successfully establish a claim of unlawful retaliation there

must be, "at a minimum, … competent evidence that the alleged retaliators *knew* of the

plaintiff's protected activity and that a retaliatory motive played a part in the adverse

employment actions alleged."'"  *Id.* at 324 (alterations in original) (quoting *Alvarado v.

Donahue*, 687 F.3d 453, 459 (1st Cir. 2012)).  "'An adverse employment action "typically

involves discrete changes in the terms of employment, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing

significant change in benefits."'"  *Garmon*, 844 F.3d at 314 (quoting *Cham v. Station

Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012)).  "A materially adverse change in the

terms and conditions of employment 'must be more disruptive than a mere inconvenience

or an alteration of job responsibilities.'"  *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35

(1st Cir. 2010) (quoting *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 23 (1st Cir. 2002)).

Title VII and Chapter 151B protect an employee against retaliation for making an

internal complaint to management or a human resources or diversity officer.  *See Fantini

v. Salem State Coll.*, 557 F.3d 22,  32 (1st Cir. 2009) (quoting *Sumner v. U.S. Postal Serv.*,

899 F.2d 203, 209 (2d Cir. 1990)).  Here, Plaintiff claims that her job responsibilities

were changed after she made a complaint to Talia Gee, the City's Diversity and Inclusion

Officer (Dkt. No. 85 at 12).  According to Plaintiff, Ms. Gee, who was on maternity leave

at the time, recommended that Plaintiff speak with Ms. Oyola (Dkt. No. 85-8 at 3; Dkt.

No. 85-13 at 5).  There is no evidence in the record that Plaintiff or Ms. Gee disclosed

Plaintiff's July 19, 2021, communication to Ms. Gee at any time before Plaintiff referred

to it in the August 17, 2021, e-mail she sent to Mr. Pikula, Ms. Julius, and Mr. Mahoney

after meeting with Mr. Pikula earlier that day, in which she stated that she "began to realize that the behaviors exhibited by the newly appointed City Clerk were unethical and deliberate in making [her] feel ostracized from the rest of the office" and reached out to Ms. Gee for guidance for this reason (Dkt. No. 83-10 at 2).

As an initial matter, while there is no doubt that an internal complaint to an employer's diversity officer could in theory satisfy the protected activity element of a retaliation claim, Plaintiff did not include her communication to Ms. Gee in her voluminous submission in opposition to Defendants' summary judgment motion. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-4; *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir.), *cert. denied*, 528 U.S. 964 (1999)). In a contemporaneous email, Plaintiff characterized Ms. Oyola's conduct as unethical rather than discriminatory. The court is not persuaded that Plaintiff has established that her complaint to Ms. Gee constituted protected conduct because she has not shown that she complained about an employment practice forbidden under Title VII or Chapter 151B in her communication to Ms. Gee. *See Fantini*, 557 F.3d at 32 (the plaintiff, who complained that a male colleague had violated a conflict-of-interest law, did not comply with the first requirement for bringing a retaliation claim because she did not make a complaint about an unlawful practice under Title VII).

Assuming arguendo that Plaintiff complained about discrimination when she communicated with Ms. Gee, she has not shown that Ms. Oyola or Mr. Mahoney knew or had reason to know that Plaintiff had complained about alleged discrimination before her job description was revised. According to Defendants, Plaintiff's job description was

revised on July 27, 2021, and became effective on August 26, 2021, when Mr. Mahoney gave the revised job description to Plaintiff during a meeting (Dkt. No. 85-13 at 4-5). There is nothing in the record contradicting Mr. Mahoney's statement about the timing of the revisions to Plaintiff's job description, which meshes with Ms. Julius's statement to Ms. Kelleher that the reason for revising Plaintiff's job description was to meet Ms. Oyola's need for administrative assistance in view of the scope and nature of her responsibilities and her perception that Plaintiff was fully occupied with public records (Dkt. No. 85-8 at 6). To the extent there is evidence in the record concerning Ms. Oyola's knowledge of Plaintiff's July 19, 2021, complaint to Ms. Gee, that evidence is Ms. Oyola's statement to Ms. Kelleher, also reflected in Ms. Kelleher's investigative report. Ms. Oyola told Ms. Kelleher that she was not aware of any of Plaintiff's complaints prior to the August 26, 2021, meeting between Plaintiff, Ms. Julius, Mr. Mahoney, and Ms. Oyola (Dkt. No. 85-8 at 6). If Plaintiff seeks to rely on an August 17, 2021, email to Ms. Oyola to show Ms. Oyola's knowledge of Plaintiff's allegations, that email only represented that Plaintiff was feeling stress in the workplace (Dkt. No. 85-9 at 2). This communication is not a complaint about conduct prohibited by state or federal antidiscrimination laws. The same is true of Plaintiff's August 23, 2021, email complaining about the "stressful environment … at work" (Dkt. No. 85-9 at 4). As to Mr. Mahoney, Plaintiff has not claimed she copied Mr. Mahoney on her communication to Ms. Gee. At his deposition, Mr. Mahoney did not remember whether he was advised of Plaintiff's communication to Ms. Gee on or around July 19, 2021 (Dkt. No. 83-3 at 5). In any event, there is no evidence in that Mr. Mahoney played a role in deciding that Plaintiff's job description should be revised.

Plaintiff has not provided any evidence to show that either Ms. Oyola or Mr. Mahoney was advised before August 17, 2021, that Plaintiff had complained to Ms. Gee on July 19, 2021 (Dkt. No. 83-10 at 2). Further, the record does not include evidence that Plaintiff had complained about alleged discrimination before her job description was revised on July 27, 2021 (Dkt. No. 85-13 at 4-5). Thus, Plaintiff has "failed to establish a causal connection between … protected conduct and the adverse employment action because she failed to show that [Ms. Oyola or Mr. Mahoney] knew about the" July 19, 2021, communication to Ms. Gee. *Pina v. Children's Place*, 740 F.3d 785, 801 (1st Cir. 2014) (citing *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013); *Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006)), or that she had complained about conduct that violated the provisions of Title VII and Chapter 151B. *See Fantini*, 557 F.3d at 32.

Plaintiff's claim of retaliation fails for the further reason that she has shown nothing more than an alteration of her job description to bring it into conformity with the work she was performing. Plaintiff agreed at her deposition that her job was in public records (Dkt. No. 83-2 at 5). She herself described that function as more than a full-time job (Dkt. No. 85-12 at 5). Her job description was revised in July 2021 to reflect that she was working in public records so that the new City Clerk could hire an assistant to perform administrative responsibilities unrelated to the public records function (Dkt. No. 85-8 at 60. Plaintiff has not shown there was any change in her grade, compensation, or the duties she actually performed as a result of the revised job description. Thus, the revised job description was not a materially adverse change in the conditions of Plaintiff's employment. *See Morales-Vallellanes*, 605 F.3d at 35.

Finally, Plaintiff appears to contend that her decision to resign from her employment with the City was a retaliatory adverse job action (Dkt. No. 83-9; Dkt. No. 85 at 13). "[T]he First Circuit has recognized that a discharge is a paradigmatic example of an adverse employment action, and that '[a] "discharge" under [Title VII] may be constructive as well as a direct firing.'" *Thirkield v. Neary & Hunter OB/GYN, LLC*, 76 F. Supp. 3d 339, 351 (D. Mass. 2015) (second and third alterations in original) (quoting *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47-48 (1st Cir. 1998); citing *Bergeron v. Cabral*, 560 F.3d 1, 7-8 (1st Cir. 2009)). Thus, under the right circumstances, a constructive discharge "'can suffice as an adverse employment action for purposes of a retaliation claim.'" *Id.* (quoting *Henricks v. White Cty.*, No. 4:10 CV 42, 2012 WL 5948199, at *8 (N.D. Ind. Nov. 28, 2012)). Plaintiff, however, cannot establish a constructive discharge "without first establishing that her work environment was hostile …." *Bodman v. Me., Dept. of Health & Human Servs.*, 787 F. Supp. 2d 89, 108 (D. Me. 2011) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *Landrau-Romero v. Banco Popular de Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000); *Hernandez-Torres*, 158 F.3d at 48); *see also Hall*, 667 F. Supp. 2d at 202 ("To prove constructive discharge, a plaintiff must offer evidence of harassment at least as severe (if not more) than that required for a hostile work environment claim."). Because Plaintiff has not shown that her work environment was hostile, any retaliation claim based on an alleged constructive discharge, and any claim of constructive discharge, fail as a matter of law.

For the foregoing reasons, Defendants are entitled to judgment on so much of Plaintiff's complaint as asserts claims of retaliation or constructive discharge under Title VII and Chapter 151B.

V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment on All Counts (Dkt. No. 81) is GRANTED.  The Clerk's Office is directed to close this case on the court's docket.

It is so ordered.

Dated: November 26, 2025                    <u>Katherine A. Robertson</u>
                                            KATHERINE A. ROBERTSON
                                            U.S. MAGISTRATE JUDGE